UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |
|---|---|
| In re:<br><br>ALEXANDER S. ORENSHTEYN<br><br>Debtor | Chapter 13<br>Case No. 05-44110-MSH |

**MEMORANDUM OF DECISION AND ORDER REGARDING
TRUSTEE'S FINAL REPORT AND ORDER OF DISCHARGE**

Before me is Citrix Systems, Inc.'s Limited Objection to Trustee's Reports and Entry of the Discharge Order or in the Alternative, Request that the Trustee's Reports and Discharge Order Be Modified.[1]

Citrix and Mr. Orenshteyn, the debtor in this case, have been embroiled in a long-running patent dispute the focal point of which is a lawsuit begun by Mr. Orenshteyn in the United States District Court for the Southern District of Florida on April 9, 2002. In the course of that lawsuit, Citrix moved for sanctions against Mr. Orenshteyn and his attorneys under FED. R. CIV. P. 11, 28 U.S.C. § 1927, and the court's "inherent powers." On April 28, 2008, the district court granted Citrix's motion and assessed sanctions jointly and severally against Mr. Orenshteyn and his attorneys in the amount of $755,663.17 under Rule 11 and § 1927 (the "First Sanctions Award"). *See generally Orenshteyn v. Citrix Systems, Inc.*, 558 F. Supp. 2d 1251 (S.D. Fla. 2008). Mr. Orenshteyn appealed the sanctions award to the United States Court of Appeals for the Federal Circuit (the "First Appeal"), which, on July 24, 2009, reversed the Rule 11 sanctions, vacated the §

---

[1] While Citrix's objection refers to two trustee's reports, only one was filed in this case, docket #172. Citrix refers to docket #171 as another trustee's report but in fact this is the trustee's notice to creditors of the filing of her report and a request for entry of the debtor's discharge.

1

1927 sanctions, and remanded the case to the district court. *See Orenshteyn v. Citrix Systems, Inc.*, 341 Fed. Appx. 621, 628 (Fed. Cir. 2009). On remand, by order dated September 30, 2010, the district court again imposed sanctions upon Mr. Orenshteyn and his attorneys (the "Second Sanctions Award"), and referred the matter to a magistrate judge for a determination as to the appropriate amount. *Orenshteyn v. Citrix Systems, Inc.*, No. 02-60478 (S.D. Fla. Sept. 30, 2010). Before the magistrate judge determined the sanctions amount, Mr. Orenshteyn again appealed to the Federal Circuit (the "Second Appeal"), challenging the Second Sanctions Award. The Federal Circuit dismissed the Second Appeal on July 26, 2012, declining to exercise jurisdiction since, in the absence of a determination by the magistrate judge as to the sanctions amount, the Second Sanctions Award was not yet final. *See Orenshteyn v. Citrix Systems, Inc.*, 691 F.3d 1356, 1364 (Fed. Cir. 2012). As of the date of the hearing on this matter, the magistrate judge had not yet ruled on the amount of the Second Sanctions Award.

On June 16, 2005, in the midst of the patent litigation but before the First Sanctions Award, Mr. Orenshteyn filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) commencing this case.[2] In schedule F of the schedules of assets and liabilities filed in support of his bankruptcy petition, Mr. Orenshteyn listed Citrix as an unsecured creditor holding an unliquidated and disputed claim in the amount of one dollar. On October 26, 2005, Citrix filed a proof of claim which was docketed as claim number 6 on the claims register maintained by this court. In the space for the claim amount Citrix inserted the word "contingent." On September 25, 2007, also before the First Sanctions Award, an order confirming Mr. Orenshteyn's chapter 13 plan was entered by this court. The plan provides for Mr. Orenshteyn to

---

[2] The patent litigation was allowed to continue for purposes of resolving the sanctions matter per this court's order granting Citrix's motion for relief from stay [#40] entered on August 17, 2005.

make total payments of $33,223.00 over five years, which would cover administrative costs, including the trustee's commission, and a projected ten percent dividend to general unsecured creditors.[3] The plan also contained the following provision regarding Citrix's claim:

> The Debtor has not provided any sum for the payment of an alleged claim by [Citrix]. The Debtor has listed Citrix as a general unsecured creditor with a disputed claim of one ($1.00) dollar. Citrix's claim arises out of a Motion For Sanctions which was filed in the Florida District Court…Citrix filed a Motion for Relief From Automatic Stay which was allowed by this Court to permit Citrix to move forward to obtain a ruling on its Motion for Sanctions. If Citrix prevails and obtains a judgment against the Debtor and Citrix properly files a Proof of Claim, then the Debtor will amend his Chapter 13 Plan to reflect the status of the Citrix Claim.

On June 16, 2008, after the First Sanctions Award and during the First Appeal, Citrix filed a motion in this court seeking leave to amend its proof of claim amount from "contingent" to $755,633.17, to reflect the amount of the First Sanctions Award, and to compel Mr. Orenshteyn to amend his plan to account for this liability.

After Citrix's motion to amend, on July 23, 2008, Citrix and Mr. Orenshteyn entered into a stipulation containing the following provisions:

> 14.    Debtor hereby consents to Citrix's request for leave to amend Citrix's claim…from $1.00 to $755,663.17 to reflect the Sanctions Award.
>
> 15.    Citrix hereby agrees that during the pendency of the Sanctions Award Appeals and any remand Debtor need not amend [his chapter 13 plan] to reflect the Sanctions Award.
>
> 16.    The Debtor hereby agrees that if upon the [Federal Circuit's] resolution of the Sanctions Award Appeals (whether by substantive decision, dismissal, or otherwise and no remand is ordered) and the Debtor still owes Citrix some or all of the Sanctions Award…then Debtor will consent to a request by Citrix

---

[3] Mr. Orenshteyn's plan was not a fixed dividend plan where unsecured creditors are guaranteed a percentage dividend but rather a pot plan where a guaranteed sum is paid into the plan and distributed pro rata. The amount of claims ultimately allowed in the case determines the unsecured creditors' actual dividend.

3

>       for an expedited hearing…on Citrix's motion to amend [Mr. Orenshteyn's chapter
>       13 plan] to reflect the full amount of any Sanctions Award.
>
>       17.    If the Debtor is successful in…his pending appeal of [the] Sanctions
>       Award…Citrix will again amend its proof of claim to reflect the same.

Subsequent to the filing of the stipulation in this court, the Federal Circuit reversed the First Sanctions Award and made its remand, the Florida district court imposed the Second Sanctions Award, and the Federal Circuit dismissed the Second Appeal. Citrix and Mr. Orenshteyn continue to await a determination by the Florida magistrate judge as to the amount of the Second Sanctions Award.

Mr. Orenshteyn's chapter 13 plan has never been modified and Citrix never amended its proof of claim after its initial amendment reflecting the First Sanctions Award. Mr. Orenshteyn made the final monthly payment to the chapter 13 trustee required by his plan on June 5, 2012. On February 6, 2013, the trustee filed her Notice of Deadline for Objections to her Final Report and Account, which also contained a request for entry of Mr. Orenshteyn's discharge. On February 7, 2013, the trustee filed her Final Report and Account. The trustee's report certified that Mr. Orenshteyn had paid $33,223.00 as required by his plan, that these funds had been disbursed by the trustee to pay administrative expenses and claims of creditors, that the estate had been fully administered, and that a final decree closing the case should enter. The trustee's report listed Citrix as receiving no payout. On February 7, 2013, an order was entered by this court discharging Mr. Orenshteyn pursuant to § 1328(a) of the Bankruptcy Code. The case was closed on February 11, 2013.

After successfully moving to reopen the case, Citrix now objects to the treatment of its claim as reflected in the trustee's report as well as to the entry of the discharge order. In its

4

objection Citrix seeks, in the alternative, withdrawal of the trustee's report and revocation of the discharge or modification of the discharge order to make it clear that the discharge does not apply to or affect its claim.

In support of its objection, Citrix argues that the stipulation provides a mechanism to amend the plan to include payment of its claim upon final determination of the amount of any sanctions award in the Florida patent litigation. Citrix asserts that since the sanctions dispute is ongoing, the plan could not possibly be fully administered since Mr. Orenshteyn has not begun, never mind completed, plan payments to Citrix. In response, Mr. Orenshteyn argues that the Federal Circuit's reversal of the First Sanctions Award finally resolved Citrix's bankruptcy claim, which was correctly treated as zero in his plan. He argues further that any claim arising out of the Second Sanctions Award is an entirely separate claim and Citrix's failure to assert that claim in a timely manner has resulted in its being discharged. Citrix retorts that the Second Sanctions Award is part and parcel of the First Sanctions Award since the Federal Circuit remanded the entire case upon reversing the First Sanctions Award and, indeed, the Florida District Court re-imposed sanctions on grounds originally pleaded, although not initially considered, prior to the First Sanctions Award. Citrix maintains that the Second Sanctions Award, whatever the amount, is thus covered by Citrix's filed proof of claim, which is deemed allowed due to Mr. Orenshteyn's failure to object to it. Finally, Citrix argues that Mr. Orenshteyn is judicially estopped from arguing that his chapter 13 discharge applies to Citrix's claim.

The parties have chosen to battle over whether the Second Sanctions Award is covered by Citrix's proof of claim, which was filed before and amended after the First Sanctions Award. This is an important question, the parties believe, because they interpret paragraph sixteen of the

5

stipulation to require that Mr. Orenshteyn's chapter 13 plan be amended if the First Sanctions Award were to be upheld in the First Appeal, with no remand ordered. Mr. Orenshteyn asserts that after the First Sanctions Award was reversed in the First Appeal, only the question of sanctions against his attorneys, and not Mr. Orenshteyn personally, was remanded to the district court and that the Florida district court's decision to impose the Second Sanctions Award was unrelated to the remand. Citrix, on the other hand, claims the remand by the Federal Circuit encompassed the entire First Sanctions award and was precisely the type of remand contemplated by the stipulation.

The debate over whether Citrix's proof of claim covers the Second Sanctions Award could be relevant here in the sense that, if the Federal Circuit's remand did not include the ruling on sanctions against Mr. Orenshteyn, the Second Sanctions Award could be seen as a new, post-petition claim not provided for in Mr. Orenshteyn's plan and thus would be outside the scope of his discharge. Perhaps symptomatic of what eleven years of litigation can do to a party's capacity for lucid thinking, each party now argues against its own interest. Mr. Orenshteyn urges that the Second Sanctions Award is unrelated to the Federal Circuit's remand while Citrix maintains that the Second Sanctions Award is part and parcel of the First Sanctions Award and that the Florida district court re-imposed sanctions on remand based on grounds that were left over from its initial sanctions motion.

Sadly for Citrix, its argument is the more persuasive. Citrix's motion for sanctions was filed on June 19, 2003, well before Mr. Orenshteyn's bankruptcy petition date. In its decision in the First Appeal, the Federal Circuit recognized that Citrix's sanctions motion sought sanctions under Rule 11, 28 U.S.C. § 1927, and the court's inherent powers but that only Rule 11 and § 1927 sanctions were imposed by the Florida district court. *Orenshteyn*, 341 Fed. Appx. at 623. In the

6

transcript of a status conference before the Florida district court on remand after the First Appeal, the court stated that it had never addressed the issue of sanctions under its inherent powers when imposing the First Sanctions Award and that the issue was still "pending" as to both Mr. Orenshteyn and his attorneys. Decl. in Supp. of Reply of Citrix, Ex. 1 at 8-9, 15. The court instructed Citrix to file another sanctions motion to properly frame the issue of sanctions under the court's inherent powers and to give all parties an opportunity to respond. Decl. in Supp. of Reply of Citrix, Ex. 1 at 15. The Florida district court based its decision to impose the Second Sanctions Award on Mr. Orenshteyn's inaccurate testimony in a deposition and his attorneys' failure to correct that inaccuracy. *Orenshteyn v. Citrix Systems, Inc.*, No. 02-60478, slip op. at 10-12 (S.D. Fla. Sept. 30, 2010). These events occurred years before the petition date, prior to Citrix's initial sanctions motion, and were considered by the Florida district court prior to imposing the First Sanctions Award. *See Orenshteyn*, 341 Fed. Appx. at 627-28.

Thus, any argument that the Second Sanctions Award is a new, post-petition claim would be unsustainable. The Second Sanctions Award arises out of the same facts and circumstances as the First Sanctions Award and so would be covered by both Citrix's proof of claim and the provision in Mr. Orenshteyn's plan providing nothing in payment of that claim.

The resolution of Citrix's objection turns not on the nature of the Second Sanctions Award or the scope of the Federal Circuit's remand but on the application of §§ 1328(a) and 1329(a) of the Bankruptcy Code. In simple, mandatory language, § 1328(a)[4] provides, with certain exceptions

---

[4] Mr. Orenshteyn filed his chapter 13 petition on June 16, 2005. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") applies only to cases commenced on or after October 17, 2005. As such, I apply the pre-BAPCPA version of all Bankruptcy Code provisions cited herein. The portions of the Bankruptcy Code provisions relevant to the resolution of this matter were not substantively changed by BAPCPA.

not applicable here, that "as soon as is practicable after completion by the debtor of all payments under the plan…the court shall grant the debtor a discharge of all debts provided for by the plan." 11 U.S.C. § 1328(a). Following logically after this directive, §1329(a) deprives the debtor or other interested parties of any ability to modify a chapter 13 plan after "completion of payments under [the] plan." 11 U.S.C. § 1329(a).

An analysis of §§ 1328(a) and 1329(a) raises two questions of statutory interpretation. First, when exactly does a debtor achieve "completion…of all payments under the plan"? Second, what exactly does it mean for a debt to be "provided for by the plan"?

I address the second question first. While not essential to its holding, the U.S. Supreme Court in *Rake v. Wade*, 508 U.S. 464, 474 (1993) provides guidance on what it means for a debt to be "provided for by the plan" under § 1328(a). The Court observed that this phrase is "commonly understood to mean that a plan 'makes a provision' for, 'deals with,' or even 'refers to' a claim." *Id.* The authors of *Collier on Bankruptcy* conclude that, "[a]s long as the plan contains some provision describing the treatment of [the] debt, and no exception to the chapter 13 discharge applies, the debt is discharged." 8 *Collier on Bankruptcy* ¶ 1328.03[3][a], p. 1328-13 (16th ed. 2013). The Bankruptcy Appellate Panel for the First Circuit recently ruled that "section 1328(a)…does not require that the plan actually provide a benefit, i.e., a payment on the debt." *The Mun. of Carolina v. Gonzalez* (*In re Gonzalez*), 490 B.R. 642, 650 (B.A.P. 1st Cir. 2013). Section 1328(a) does not even require that the claim amount be stated correctly in a debtor's chapter 13 plan. *In re Bryant*, 323 B.R. 635, 644 (Bankr. E.D. Pa. 2005).

Under the Supreme Court's broad interpretation of the phrase "provided for" in *Rake v. Wade*, there is no question that Citrix's claim is provided for by Mr. Orenshteyn's plan. The plan

8

dedicates an entire paragraph to discussing Citrix's claim and specifically states that it does "not provide any sum for the payment of an alleged claim by [Citrix]." Citrix would perhaps have a colorable argument that its claim was not provided for by the plan at the point it was amended from a "contingent" amount to $755,633.17 on June 16, 2008, after the plan's confirmation date. *See* 4 Keith M. Lundin, *Chapter 13 Bankruptcy* § 349.1, pp. 349-12 to 349-13 (3d. ed. 2007). But Citrix waived this argument in the stipulation where it agreed that Mr. Orenshteyn need not amend his plan during the pendency of the First Appeal and any remand thereof. Citrix effectively assented to continued treatment of its claim at zero in Mr. Orenshteyn's plan, even in light of its amended claim.

The issue is not whether Mr. Orenshteyn's plan provides for Citrix's claim in a way that pleases Citrix. The issue is whether the plan provides for Citrix's claim in the broad sense established in *Rake v. Wade*. It does.

Under § 1329(a) any unsecured creditor, like Citrix, would have been free, prior to completion of plan payments, to move the court to require plan modification in order to obtain more favorable treatment in light of changed circumstances. Citrix moved only once for plan modification, more than five years ago, but the motion was resolved by the stipulation and resulted in no actual modification to the plan. As such, Citrix's claim for sanctions arising out of the Second Sanctions Award is provided for in the plan and will be discharged upon completion of plan payments pursuant to § 1328(a).

Which brings me back to my first question arising out of the application of §§ 1328(a) and 1329(a)—when exactly does a debtor achieve "completion…of all payments under the plan"? This phrase appears in both §§ 1328(a) and 1329(a), but the Bankruptcy Code offers no guidance as to

9

its meaning. Some suggest that "bankruptcy courts should look to the substance of the plan and the nature of the debtor's total obligation to the allowed creditors [sic] in order to discern when payments under a plan are completed," as opposed to looking strictly at the number of payments proposed in the plan or plan duration. *Casper v. McCullough* (*In re Casper*), 154 B.R. 243, 246 (N.D. Ill. 1993); *see also In re Carr,* 159 B.R. 538, 542 (D. Neb. 1993). More directly, "it makes sense to look at the entire plan and to declare completion of payments when all the financial conditions stated in the plan are satisfied." 4 Keith M. Lundin, *Chapter 13 Bankruptcy* § 343.1, pp. 343-3 to 343-4 (3d. ed. 2007).

By way of a simple example, consider a case where a chapter 13 plan's monthly payments do not provide enough money for the trustee to cover the dividend guaranteed to unsecured creditors in the plan. In a case involving similar facts, our circuit court held that the debtor was required to pay additional sums to satisfy a plan's guaranteed dividend, even when the debtor had dutifully made all the monthly payments otherwise specified in the plan. *Roberts v. Boyajian* (*In re Roberts*), 279 F.3d 91, 92-93 (1st Cir. 2002). In other words, a debtor must satisfy two financial conditions in order to receive a discharge: (1) make all monthly payments provided for in the plan; and (2) pay all unsecured creditors the dividend specified in the plan.

A more complicated example, and one that is particularly instructive in this case, can be found in the facts of *In re Harter*, 279 B.R. 284 (Bankr. S.D. Cal. 2002). In *Harter*, a chapter 13 debtor became entitled to a post-petition inheritance a little over half way through his five year plan term. *Id*. at 286. If received during the plan term, the inheritance would have enabled the debtor to pay 100% of the allowed unsecured claims. *Id.* The bankruptcy court issued an order modifying the plan, directing the debtor to turn over to the chapter 13 trustee all inheritance

10

proceeds immediately upon receipt. *Id.* The debtor had not received any of the inheritance proceeds as of the date he tendered his last monthly plan payment to the trustee. *Id.* at 286. In denying the chapter 13 trustee's motion to dismiss the case, the court determined that the debtor had completed payments under the plan, because the debtor had made his required 60 monthly payments and satisfied the promised dividend to unsecured creditors. *Id*. at 287. The court observed that the plan did not provide that the debtor needed to pay the inheritance into the plan if he received it after the five year term. *Id.* at 289. The court further observed that § 1322(d) of the Bankruptcy Code would preclude such a result. *Id*. at 289-90. Since § 1322(d) establishes that the maximum term for chapter 13 plans is five years, a bankruptcy court could never approve a plan proposing payment beyond the five year limit. *Id.*

Here, Mr. Orenshteyn's plan provides for payments over the maximum term allowed by statute—five years. In paragraph fifteen of the stipulation Citrix agreed that the plan need not be amended during the pendency of the First Appeal and in fact the plan was never amended. Indeed, Citrix has not even moved for plan modification since the June 23, 2008 stipulation. [5]

Mr. Orenshteyn has completed all monthly payments under his chapter 13 plan and satisfied the dividend to unsecured creditors specified in the plan. The provisions of a confirmed chapter 13 plan are treated as a binding contract between a debtor and his creditors unless and until the plan is modified. 11 U.S.C. § 1327(a); *In re Darden*, 474 B.R. 1, 9 (Bankr. D. Mass. 2012). Section 1329(a) bars plan modification after the completion of plan payments. Accordingly, payments under the plan are complete, the plan may no longer be modified, and Citrix is bound by

---

[5] Even if Citrix had moved for plan modification after the stipulation, contrary to Citrix's characterization, paragraph sixteen of the stipulation did not require Mr. Orenshteyn to consent to the modification of his plan, but only to consent to an expedited hearing on Citrix's motion to modify the plan.

the terms of the plan as written.

Further, as the court in *Harter* recognized, under § 1322(d), the court may never allow confirmation of a plan with a term longer than five years. The argument that Mr. Orenshteyn's chapter 13 plan could stay open until such time as the sanctions award amount is finally determined in the Florida patent litigation is simply inconsistent with the plan length limitations set forth in § 1322(d). As in *Harter*, the provisions of the plan and the stipulation arguably facilitating plan modification only operate within the five year plan term. Citrix either could not or did not take advantage of those provisions prior to plan completion. Upon plan completion, it is too late.

As a final matter, Citrix argues in its reply brief that Mr. Orenshteyn is judicially estopped from arguing that his chapter 13 discharge applies to Citrix's claim since Mr. Orenshteyn took the opposite position in the Florida district court suit. On remand after the First Appeal, Citrix sought dismissal of the entire patent litigation, arguing, at least in part, that monetary sanctions would no longer serve any purpose because of Mr. Orenshteyn's bankruptcy and presumably his ultimate discharge. Mr. Orenshteyn opposed dismissal arguing, among other things, that any sanctions award would be non-dischargeable in his bankruptcy. Citrix contends that Mr. Orenshteyn's position then is inconsistent with his position now that the discharge applies to Citrix's claim.

The contours of judicial estoppel are "hazy" but courts applying the doctrine generally require the presence of three things: (1) "a party's earlier and later positions must be clearly inconsistent"; (2) "the party must have succeeded in persuading a court to accept the earlier position"; and (3) "the party seeking to assert the inconsistent position must stand to derive an unfair advantage." *Perry v. Blum*, 629 F.3d 1, 8-9 (1st Cir. 2010).

12

Even if I were to accept that Mr. Orenshteyn's positions are clearly inconsistent, Citrix has not made a sufficient showing that the Florida district court accepted Mr. Orenshteyn's earlier position. "The showing of judicial acceptance must be a strong one" and is made by affirmatively demonstrating "by competent evidence or inescapable inference, that the prior court adopted or relied upon the previous inconsistent assertion." *Perry*, 629 F.3d at 11-12. The Florida district court's opinion on remand imposing the Second Sanctions Award addresses Citrix's motion to dismiss as follows: "Citrix's has asked that, rather than imposing monetary sanctions against Mr. Orenshteyn, I dismiss the case. I decline to take that drastic step at this stage. Only monetary sanctions will be imposed against Mr. Orenshteyn at this juncture." *Orenshteyn v. Citrix Systems, Inc.*, No. 02-60478, slip op. at 12 (S.D. Fla. Sept. 30, 2010). There is no indication in its opinion that the Florida district court accepted Mr. Orenshteyn's argument, only that the court felt that dismissal was too drastic a sanction. "The need for a strong showing derives from the maxim that judicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Id.* at 11 (citing *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996) ("The insistence upon a court having accepted the party's prior inconsistent position ensures that judicial estoppel is applied in the narrowest of circumstances.")). Accordingly, I find Citrix's judicial estoppel argument to be unavailing.

Citrix's claim was provided for in Mr. Orenshteyn's sixty month plan (albeit at zero) and now payments under the plan are complete. The chapter 13 trustee correctly noted these payments, or lack thereof, in her report. It is now too late for Citrix to change this result. Section 1328(a) *mandates* that I enter the discharge in this case. Accordingly, Citrix's Limited Objection to

Trustee's Reports and Entry of the Discharge Order or in the Alternative, Request that the

Trustee's Reports and Discharge Order be Modified is OVERRULED and DENIED.

Dated: October 17, 2013                                     By the Court,

 

*[signature]*

Melvin S. Hoffman
U.S. Bankruptcy Judge

      Counsel Appearing:    Daniel M. Glosband, Esq.
Goodwin Proctor, L.L.P.
Boston, MA
For Citrix Systems, Inc.

Laurel E. Bretta, Esq.
Bretta & Grimaldi, P.A.
Medford, MA
For the debtor, Alexander S. Orenshteyn

Denise M. Pappalardo, Esq.
Worcester, MA
Chapter 13 Trustee

14